UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, RUSSEL E. BURNS and JAMES E. MURRAY, Trustees; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TDW CONSTRUCTION, INC., a California Corporation,<br><br>Defendant. | No. C 19-01985 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this ERISA action arising of defendant's late payments of fringe benefits, plaintiffs move for summary judgment. Plaintiffs allege breach of the parties' collective bargaining agreements and seek liquidated damages, interest, and attorney's fees. For the following reasons, their motion is **GRANTED IN PART AND DENIED IN PART.**

**STATEMENT**

Defendant TDW Construction, Inc., entered into two collective bargaining agreements with the Operating Engineers Local 3 of the International Union of Operating Engineers, AFL-CIO ("Union"), covering the time period relevant to this action. The collective bargaining agreements required defendant to make regular health and welfare, pension and other fringe-

benefit contributions on behalf of its employees for all hours worked to plaintiff employee-benefit trust funds (hereinafter "the plans") (Dkt. No. 12 at ¶ 11–14) (*see also* Reding Decl., Exhs. A, B, C). Contributions were due on the fifteenth day of the month following the month in which hours were worked, and became delinquent on the 25th day. Delinquent contributions entitle the plans to liquidated damages, interest, attorney's fees, and costs. Interest accrues at a rate of ten percent, from the date they became delinquent until paid in full. The agreements provided for an assessment of ten percent in liquidated damages prior to litigation and twenty percent once litigation has commenced (Reding Decl., Exh. B, Section 12.13.01; Exh. C, Section 12.13.01; Exh. D, Section 10(3)–(4)) (*see also* Dkt. No. 12 at ¶ 13).

    From April 2018 to February 2019, defendant made delinquent contribution payments. Though defendant eventually paid its owed contributions for those months, it refused to pay a partial balance for September 2018. So, the plans filed a complaint on April 12, 2019, seeking damages and injunctive relief for an alleged breach of contract governed by Section 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1145, and Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. 185 (Dkt. No. 1). The complaint sought (1) contributions owed for September 2018 and March 2019, including liquidated damages and interest thereon; (2) liquidated damages and interest owed for April 2018 through October 2018, December 2018, and February 2019; (3) additional contributions that may arise during litigation, including liquidated damages and interest thereon; and (4) attorney's fees and costs (Dkt. No. 1 at 8). Subsequently, defendant also made delinquent contribution payments from April 2019 through November 2019 (Ilacqua Decl. at ¶¶ 23–30).

    Following tentative resolutions in mediations, defendant failed to pay the amounts agreed upon. On March 5, 2020, however, defendant made an informal payment of $20,000, which the plans allocated to amounts due for liquidated damages, interest, attorney's fees, and costs (Stafford Suppl. Decl. at ¶ 8). As a result of all payments that defendant has made to date, including the $20,000 payment, it has paid all outstanding contribution amounts and costs, as well as portions of its owed liquidated damages, interest, and attorney's fees. The plans now

move for summary judgment and seek $59,278, representing the aggregate amount for the remaining liquidated damages, interest, and attorney's fees.

The parties' agreements further required defendant to keep time records and authorized the plans' representatives to initiate a review of defendant's records at any time in order to determine if defendant had paid its contributions in full. Should an audit reveal defendant's failure to fully and promptly pay, they must reimburse the plans the amounts due, along with other fees provided for in the agreements, including attorney's fees and costs, interest, and liquidated damages (Reding Decl. at ¶11). A November 2019 audit allegedly showed that defendant had failed to report hours worked by its principal shareholder, Edmundo D. Alire, for the entire period from April 2015 through January 2017. The plans' motion initially sought an additional $149,938 in unpaid contributions and interest stemming from the audit, but withdrew this request following defendant's evidentiary objections (Dkt. No. 37 at 2).

### 1. DEFENDANT'S EVIDENTIARY OBJECTIONS.

As an initial matter, defendant argues that the plans' motion should be denied because the declarations that form the motion's factual basis violate the undersigned judge's supplemental order and should thereby be precluded under FRCP 37(c).

The plans initially submitted the declarations of Sonya Brown and Quackenbush to supply the factual basis for their motion. Defendant objected to both declarants, claiming that the plans had failed to list either declarant on their initial disclosures. In response, the plans withdrew their demand for additional damages based on an audit of defendant's records, which they had supported with Quackenbush's declaration. Furthermore, the plans' reply brief affixed the declarations of Ryan Ilacqua and Dan Reding — both of whom they had listed on their initial disclosures — in lieu of Brown's declaration. Importantly, the declarations of Reding and Ilacqua furnished the same facts as Brown's declaration. The only new testimony provided in these declarations responded to issues raised in defendant's opposition (*see* Decl. Reding; Decl. Ilacqua). Because Brown had personal knowledge as to all the facts relating to the instant motion, the plans apparently provided the declaration of Brown for the convenience of supplying one declaration versus multiple (Dkt. No. 37 at 2–3).

3

Defendant then filed an objection to the plans' reply evidence pursuant to Local Rule 7-3(d)(1). Defendant cites to the undersigned judge's supplemental order, which states that reply declarations "are disfavored. Opening Declarations should set forth all facts on points foreseeably relevant to the relief sought. Reply papers should not raise new points that could have been addressed in the opening" (*See* Judge William Alsup's supplemental order to order setting initial case management conference at ¶10).

To be sure, the plans' reason — the convenience of preparing one declaration — is hardly a compelling one. But, because the declarations of Reding and Ilacqua supply the same facts as Brown's declaration, and all new facts included in them merely responded to defendant's opposition, and because the error is harmless, their preclusion is not warranted under these circumstances. Accordingly, this order **DENIES** defendant's request for preclusion and proceeds to consider the declarations of Reding and Ilacqua in lieu of Brown's declaration in ruling on the plans' motion for summary judgment.

2. **LEGAL STANDARD.**

Summary judgment is proper pursuant to FRCP 56 if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of establishing a genuine issue of material fact. When, as here, the moving party bears the ultimate burden of proof at trial, it can meet this initial burden of production by "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotations omitted). In other words, the movant must affirmatively show the absence of any genuine issue of material fact as to every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992).

**ANALYSIS**

Section 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1145, creates a federal claim for relief against employers who do not make timely contributions as required under the terms of a collective bargaining agreement. *See, e.g., Trustees of the Screen Actors Guild-Producers Pension & Health Plans & Health Plans v. NYCA, Inc.*, 572 F.3d 771,

774–76 (9th Cir. 2009). To prove a claim under Section 1145, the plans must show that (1) the trusts are multiemployer plans as defined by 29 U.S.C. 1002(37); (2) the collective bargaining agreements required defendant to make contributions; and (3) defendant failed to make the required contributions. 29 U.S.C. 1145. Because it is undisputed that the plans are multiemployer plans within the meaning of ERISA; that defendant remained bound to the collective bargaining agreements requiring it to make timely contributions payments to the plans; and defendant failed to make timely contributions thereto, the plans have successfully established liability under Section 1145.

Under ERISA, an employee benefit plan that obtains judgment in its favor in an action for unpaid contributions under Section 1145 is entitled to the following remedies:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant[.]

29 U.S.C. 1132(g)(2). This section further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan[.]" An award under Section 1132(g)(2) is mandatory when (1) the employer remained delinquent at the time of the complaint; (2) the district court enters judgment against the employer; and (3) the plan provides for such an award. *See Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).

Where ERISA does not apply — that is, where unpaid contributions did not exist at the time of the complaint — the LMRA also permits multiemployer plans to sue for breaches of a collective bargaining agreement. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 217 (9th Cir. 1989). Federal courts apply federal

5

common law principles to determine the enforceability of contract provisions like liquidated damages provisions. *Ibid.*

Here, the plans seek the following awards, claiming either a statutory basis under ERISA or a contractual basis pursuant to the terms of the parties' collective bargaining agreements, or both (Dkt. No. 41):

| Work Month | Contributions Reported | 20% Liquidated Damages | 10% Interest (through date paid) | Subtotal |
|---|---|---|---|---|
| September 2018 | $20,453.34 | $4,090.67 | $0 | $4,090.67 |
| March 2019 | $17,382.66 | $3,476.53 | $0 | $3,476.53 |
| April 2019 | $21,109.80 | $4,221.96 | $0 | $4,221.96 |
| May 2019 | $23,414.01 | $4,682.80 | $0 | $4,682.80 |
| June 2019 | $20,709.33 | $4,141.87 | $0 | $4,141.87 |
| July 2019 | $22,388.15 | $4,477.63 | $0 | $4,477.63 |
| August 2019 | $21,783.11 | $4,356.62 | $0 | $4,356.62 |
| September 2019 | $19,114.53 | $3,822.91 | $0 | $3,822.91 |
| October 2019 | $19,207.57 | $3,841.51 | $0 | $3,841.51 |
| November 2019 | $13,404.96 | $2,680.99 | $20.95 | $2,701.94 |
| Subtotal: | | $39,793.49 | $20.95 | $39,814.44 |
| 10% Liquidated Damages on Contributions paid late, prior to filing of the Complaint (4/18 – 8/18; 10/18—12/18, 2/19) | | | | $15,617.14 |
| Subtotals (Liquidated Damages and Interest): | | | | $55,431.58 |
| Attorneys' Fees (1/11/19-4/1/20): | | | | $18,040.50 |
| Costs (1/11/19-4/1/20): | | | | $960.12 |
| Credit towards Attorneys' Fees: | | | | ($14,194.00) |
| Credit towards Attorneys' Costs: | | | | ($960.12) |
| GRAND TOTAL DUE: | | | | $59,278.08 |

Defendant does not challenge the plans' request for attorney's fees or interest. Rather, defendant challenges the imposition of liquidated damages (*see* Dkt. No. 31).

1.     **LIQUIDATED DAMAGES.**

ERISA mandates statutory liquidated damages "when (1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers*, 875 F.2d at 215 (emphasis in original). These liquidated damages remain mandatory whether or not the employer makes a post-suit, pre-judgment payment of its owed contributions. *See Northwest Adm'rs, Inc*. 104 F.3d at 258.

The collective bargaining agreements here provide (Reding Decl. at ¶ 9; Exhs. B and C):

> . . . the amount of liquidated damages to the Trust Funds resulting from any Individual Employer's default, over and above attorney's fees, audit fees and interest for delinquent contributions, shall be 10% of the unpaid contributions as of the delinquent date. However, if a lawsuit to collect delinquent contributions has been filed, the amount of liquidated damages on the unpaid contributions shall be increased to an amount equal to the greater of 20% of the unpaid contributions.

6

The plans seek three categories of liquidated damages: (1) ten percent for delinquent contributions paid before this action, (2) twenty percent for delinquent contributions that remained unpaid as of the filing of the complaint, and (3) twenty percent for contributions that came due during this suit. Each is discussed in turn below.

The parties' disagreement focuses on the following two issues: (1) whether or not unpaid contributions existed at the time of the complaint; and (2) the correct percentage of liquidated damages to be applied to late-paid contributions that became delinquent after the start of litigation — that is, whether they should be assessed at ten percent or twenty percent.

### A. CATEGORY 1: LIQUIDATED DAMAGES ON DELINQUENT CONTRIBUTIONS PAID BEFORE THIS SUIT.

With respect to this first category, the plans only seek liquidated damages of ten percent pursuant to the terms of the master agreements. In other words, they seek liquidated damages as a matter of contract under the LMRA, not statutory liquidated damages under ERISA. No genuine dispute remains that defendant made delinquent contributions payments for the months of April 2018 through August 2018, October 2018 through December 2018, and February 2019 (Ilacqua Decl. at ¶¶ 12–16; ¶ 18–21). Defendant concedes as much.

The collective bargaining agreements prescribe ten percent liquidated damages on delinquent contributions paid before litigation (*See* Reding Decl. at ¶ 9, Exhs. B and C). Indeed, defendant's opposition concedes that "it is undisputed that the liquidated damages rate for contributions that are paid untimely, but prior to the filing of a complaint is 10%" (Dkt. No. 31 at 8).

Courts in this district regularly "award damages on contributions that were paid, but paid late on the basis of contract law and federal common law rather than ERISA statutory law." *Operating Engineers Health & Welfare Tr. Fund for N. California v. JS Taylor Construction, Inc.*, 2019 WL 6117478, at *7 (N.D. Cal., Nov. 18, 2019) (Judge Edward M. Chen) (quoting *Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. California v. Perez*, 2011 WL 6151506, at *11 (N.D. Cal. Nov. 7, 2011) (Magistrate Judge Joseph C. Spero)).

Because defendant admits that the collective bargaining agreements entitle the plans to ten percent in liquidated damages for contributions that it undisputedly paid late for the months of April 2018 through August 2018, October 2018 through December 2018, and February 2019, this order **GRANTS** the plans' motion as it pertains to liquidated damages (assessed at ten percent) for these months, as a matter of contract.

### B. CATEGORY 2: LIQUIDATED DAMAGES ON DELINQUENT CONTRIBUTIONS THAT REMAINED UNPAID AT THE TIME OF THIS SUIT.

The plans seek twenty percent in liquidated damages on late-paid contributions for September 2018 and March 2019, asserting both a statutory basis under ERISA, and a contractual basis under LMRA.

Under *Idaho Plumbers*, ERISA mandates an award of liquidated damages where (1) the plans obtain a judgment in their favor; (2) unpaid contributions existed at the time of the complaint; and (3) where the parties' agreements provide for such damages. 875 F.2d at 215.

The plans have clearly satisfied the first and third factors under *Idaho Plumbers* — *first*, through this order, they have obtained a judgment in their favor, and *second*, the collective bargaining agreements provide for an assessment of liquidated damages (assessed at ten percent pre-litigation, and twenty percent post-litigation). Indeed, the parties' disagreement concerns the second factor under *Idaho Plumbers*: whether or not unpaid contributions existed at time of this suit. Though the plans argue that the September 2018 and the March 2019 contributions remained both delinquent and unpaid when they filed their complaint, defendant disagrees.

As to the September 2018 contributions, though defendant doesn't dispute that it paid these contributions late, it argues that it fully paid its owed September 2018 contributions in December 2018, well before the commencement of this action. The plans argue that a partial balance of $2,483 remained, however.

The parties' disagreement arises out of a duplicate entry for hours defendant reported for that month. In October 2018, defendant submitted its contribution report for September 2018, which showed that it owed the plans $17,970 in fringe benefits for that month. Thereafter,

8

defendant sent the plans multiple checks, intending to pay its $17,970 obligation.  Along with one of the checks it sent in November 2018, defendant also submitted *additional* spreadsheets, which seemed to report additional hours for September, adding $4,361 to defendant's obligation for that month.  Apparently, defendant intended the additional hours in the spreadsheets it submitted with its payments to be applied to the hours it had already reported for September, not to report additional hours.  Because the spreadsheets did not make clear that the hours listed had already been reported, however, the plans processed those hours as additional hours, requiring defendant to pay an additional $4,361, atop the $17,970 it had already reported.

Pursuant to the "Mistaken Contribution Policy" in the trust agreements, once vacation benefits have been allocated, they cannot be recovered; however, contributions for pension and retiree welfare may be refunded (Ilacqua Decl. at ¶ 17, Exh. D).  Thus, when it became clear that defendant had not intended to report additional hours for September 2018, it received a credit for the over-reported pension and retiree welfare hours in the amount of $1,878, but not for the remaining $2,483 that had already been allocated to the vacation fund.  Although defendant made a late payment of the $17,970 before the initiation of this action, it refused to pay the remaining balance of $2,483, corresponding to the non-refundable amount associated with the duplicate entry despite numerous collection efforts by the plans (*ibid.*).

Since an unpaid balance ($2,483) for defendant's September 2018 contributions existed at the time of the complaint, ERISA mandates an award of statutory liquidated damages only as to that unpaid amount, but not with respect to the amount that defendant paid prior to this action.  Pursuant to the terms of the master agreements, liquidated damages on the amount that remained unpaid at the time of the complaint ($2,483) is calculated at twenty percent, and liquidated damages on the late paid pre-litigation amount ($17,970) is assessed at ten percent.  As such, the plans are entitled to the liquidated damages on the former as a matter of statute, and to liquidated damages on the latter as a matter of contract.

Accordingly, this order **GRANTS** the plans' motion insofar as it seeks twenty percent in statutory liquidated damages on the unpaid balance ($2,483) as of the time of the complaint, but **DENIES** their motion insofar as it seeks twenty percent on the amount paid pre-litigation

($17,970). Instead, consistent with the collective bargaining agreements, this order **AWARDS** ten percent in liquidated damages on the latter amount of $17,970.

As to the March 2019 contributions, defendant argues that they had not yet become due, let alone delinquent, at the time of the complaint. This order agrees. According to the terms of the collective bargaining agreements and trust agreements incorporated therein, defendant's March 2019 contributions did not become due until April 15, and became delinquent only after April 25. Because the plans filed their complaint on April 12, prior to defendant's March contributions becoming due or delinquent, unpaid contributions for the month of March 2019 did not exist at the start of this action. Nevertheless, defendant's March 2019 contributions later became delinquent when it failed to remit payment by April 25 (*see* Ilacqua Decl. at ¶ 22; Stafford Suppl. Decl. at ¶ 11). Because defendant became delinquent after the filing of the complaint, the plans' entitlement (or not) to statutory liquidated damages for March 2019 cascade into the third category of damages, which this order now turns to.

### C. CATEGORY 3: LIQUIDATED DAMAGES ON CONTRIBUTIONS THAT FELL DUE DURING THIS SUIT.

The plans also seek twenty percent in mandatory statutory liquidated damages for the third category: contributions that fell due *after* the filing of this action. The evidence shows that defendant made late payments for contributions that became due during the course of this suit — March 2019 through November 2019 (Ilacqua Decl. at ¶ 22–30).

Our court of appeals has not directly addressed whether or not statutory damages extend to this category of delinquent contributions. In the absence of controlling authority, district courts in this district have split on this issue. Some courts, citing *Idaho Plumbers'* language that "unpaid contributions exist at the time of the suit," have ruled that statutory damages are not available for contributions which became delinquent after the filing of the complaint. *See Board of Trustees v. Udovch*, 771 F.Supp.1044, 1051 (N.D. Cal., Sep. 5, 1991) (Magistrate Judge Wayne D. Brazil). In *Roofers Local Union No. 81 v. Wedge Roofing,* 811 F.Supp.1398, 1401–02 (N.D. Cal., Sep. 11, 1992), however, Judge Weigel extended statutory damages to this category of delinquent contributions, reasoning that such an approach is not only consistent with the

10

legislative intent underlying ERISA, but also promoted efficiency and judicial economy. This latter approach appears to be the modern trend in this district. *See Bd. of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F.Supp.3d 1220, 1232 (N.D. Cal. 2014) (Magistrate Judge Joseph Spero) (awarding twenty percent in statutory liquidated damages for contributions that fell due post-complaint); *see also Operating Engineers Health & Welfare Tr. Fund for N. California v. JS Taylor Construction, Inc.*, 2019 WL 6117478, at *7 (N.D. Cal., Nov. 18, 2019) (Judge Edward M. Chen) (same).

This Court, too, has followed that trend. *Operating Engineers Health & Welfare Tr. Fund for N. California v. Breneman, Inc.*, 2018 WL 5099250 (N.D. Cal. Aug. 15, 2018) (Magistrate Judge Elizabeth D. Laporte), *report and recommendation adopted*, No. 17-cv-05172-WHA, 2018 WL 6822624 (N.D. Cal. Oct. 9, 2018) (Judge William Alsup). This order adheres to the trend and holds that contributions that fall due *after* the complaint may give rise to an award of mandatory liquidated damages under ERISA, as provided in the collective bargaining agreements, in an amount not to exceed twenty percent. *See* 1132(g)(2)(C)(ii).

Next, this order must determine what percentage in liquidated damages the subject agreements provide for this category of damages. The plans argue that the agreements provide for liquidated damages of twenty percent on contributions that became delinquent post-litigation. Defendant disagrees. It argues that the relevant clauses in the collective bargaining agreements provide for twenty percent in damages only for delinquent contributions that "necessitate[ed] the filing of the complaint" (Dkt. No. 31 at 8). Because this third category of damages arose post-litigation, it argues, they could not have necessitated filing the complaint, and hence, twenty percent is inapplicable. This order disagrees.

The collective bargaining agreements provide (Reding Decl. at ¶ 9; Exhs. B and C):

> [I]f a lawsuit to collect delinquent contributions has been filed, the amount of liquidated damages on the unpaid contributions shall be increased to an amount equal to the greater of 20% of the unpaid contributions.

Contrary to defendant's contention, there is no express or implied requirement in the master agreements that limits liquidated damages of twenty percent to only delinquent

contributions which necessitated this litigation. Rather, the clause states that liquidated damages are calculated at twenty percent once litigation to collect delinquent contributions has commenced. Furthermore, courts in this district, including the undersigned judge in *Breneman*, have awarded twenty percent on this category of damages based on the same collective bargaining agreements at issue in this action. *See Breneman*, 2018 WL 6822624; *see also JS Taylor Construction*, 2019 WL 6117478. Tellingly, defendant fails to cite to any authority which has interpreted the provision any differently.

For the reasons stated herein, this order holds that the plans have proven their entitlement to statutory liquidated damages assessed at twenty percent for the months of March 2019 through November 2019, and hereby **GRANTS** their motion for liquidated damages for those months.

2.  **INTEREST.**

The plans also seek ten percent in interest on defendant's late-paid contributions for November 2019, totaling $21. Because the subject agreements provided for an accrual of ten percent interest on late-paid contributions, and because defendant does not oppose this request, this order **GRANTS** the plans' motion insofar as it seeks interest on late-paid contributions for November 2019.

3.  **ATTORNEY'S FEES.**

The plans also seek to recover attorney's fees pursuant to Section 1132(g)(2), and pursuant to the terms of the master and trust agreements. The plans incurred a total of $18,040 in attorney's fees from January 2019 through April 2020. Given the allocation of defendant's $20,000 payment towards attorney's fees, the plans seek the remaining amount of $3,864. Defendant's brief does not address and/or oppose the request for attorney's fees. Moreover, the collective bargaining and trust agreements provide for an award of reasonable attorney's fees (Reding Decl. at ¶ 10, Exhs. B and C). An award of fees pursuant to Section 1132(g)(2) is therefore mandatory because, as stated above, unpaid contributions existed at the time of the complaint and the subject agreements provide for reasonable attorney's fees. *See Northwest Adm'rs, Inc*, 104 F.3d at 257.

To determine a reasonable fee award, federal courts apply the lodestar method, which calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a reasonable hourly rate. *See Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). A reasonable hourly rate is that prevailing in the community — "the forum in which the district court sits" — for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Counsel for the plans billed $235 per hour for the shareholder attorney (Michelle Stafford), $230 per hour for the associate attorney, and $135 per hour for the paralegals. In *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007), our court of appeals held that rates between $375–$400 were in line with rates charged by ERISA counsel. Moreover, the undersigned judge has previously granted attorney's fees and paralegal fees assessed at the same rate, by the same firm, and in a similar action. *See Breneman.*, 2018 WL 6822624 (N.D. Cal., Oct. 9, 2018) (Judge William Alsup) (accepting and adopting Magistrate Judge Elizabeth Laporte's report and recommendation which held that the plans' counsel's rates, including for paralegals, were reasonable). So too here.

This order also finds that the hours the plans' counsel expended on this action are reasonable. Hours spent on an action are reasonable if they are not "excessive, redundant, or otherwise unnecessary." *Welch* at 946 (citation and quotations omitted). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id*. at 945–46.

The plans seek payment for 86.2 hours of legal work, consisting of 17.2 hours by shareholder Stafford, 49.3 hours by associate Luz Mendoza, 13.7 hours by paralegal Nargis Shaghasi, and six hours by paralegal Alicia Wood (Stafford Decl. at ¶¶ 14–15). Stafford's declaration is supported by her firm's billing ledger, which chronicles the hours spent on various tasks, including the drafting of this motion. Because a review of the plans' counsel's billing ledger fails to reveal any excessive, redundant, or otherwise unnecessary hours billed, they are

thus reasonable.  Accordingly, this order **GRANTS** the plans' motion for summary judgment insofar as it seeks attorney's fees.

### 4.     INJUNCTIVE RELIEF.

This order notes that to the extent the complaint additionally sought injunctive relief, the plans have abandoned the request.  Their motion seeks no relief aside from the relief described above.

### CONCLUSION

For the reasons stated herein, the plans' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

- The motion for summary judgment for liquidated damages of ten percent for late-paid contributions for the months of April 2018 through August 2018, October 2018 through December 2018, and February 2019, totaling $15,617.14, is hereby **GRANTED**.

- The motion for summary judgment for twenty percent liquidated damages assessed on the entirety of the contribution amount for September 2018 is **DENIED**.  Instead, this order **AWARDS** $2,293.60, representing ten percent in liquidated damages on the amount defendant paid pre-suit, and twenty percent on the amount paid post-suit.

- The motion for summary judgment for liquidated damages of twenty percent for the months of March 2019 through November 2019, totaling $35,702.82, is hereby **GRANTED**.

- The motion for summary judgment for interest in the amount of $20.95 is hereby **GRANTED**.

- The motion for summary judgment for the plans' remaining attorney's fees in the amount of $3,864.50 is hereby **GRANTED**.

**IT IS SO ORDERED.**

Dated:  May 18, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE